**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD DORRANCE, on behalf plaintiff and two classes,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:12-2502** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **ARS NATIONAL SERVICES, INC.,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## <u>MEMORANDUM</u>

Pending before the court is the parties' request for final approval of class action settlement. On the terms and for the reasons set forth herein, the parties' request will be granted.

## I.    Procedural History

By way of relevant background, on December 14, 2012, the plaintiff, on behalf of himself and two classes, brought the instant action for damages seeking redress for violations of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. §1692, et seq., which prohibits debt collectors from engaging in abusive, unfair, and deceptive practices. (Doc. 1). A joint motion for preliminary approval of class action settlement agreement was filed on December 17, 2013. (Doc. 23). After directing the parties to respond to

concerns of the court regarding the proposed settlement, (Doc. No. 24, Doc. 27, Doc. 29), by order dated September 26, 2014, the court granted preliminary approval of the proposed class action settlement, (Doc. 31). The court again granted preliminary approval to the parties' proposed settlement on January 6, 2015, when the terms of the agreement were modified due to an error in calculating the class size. (Doc. 37).

A final fairness hearing was originally set for April 14, 2015. (Doc. 37). By order dated February 20, 2015, the final fairness hearing was re-scheduled to April 24, 2015, (Doc. 38), and was again re-scheduled to April 23, 2015, by order dated March 24, 2015, (Doc. 39).

The plaintiffs submitted their brief in support of the final approval of the class action settlement on April 21, 2015, (Doc. 41), and the final fairness hearing, in fact, took place on April 23, 2015.

## II.    Discussion

### A.    Plaintiff's Complaint

In his complaint, the plaintiff alleges that debt collection letters sent to him by the defendant did not state the date on which the amount due was calculated and did not explain that interest would continue to accrue on unpaid principal. The plaintiff alleges that this allows the letters to be read in

2

two contradictory ways contrary to the provisions of the FDCPA, i.e., that the stated amount of the debt was static, or that the stated amount of the debt was correct only as of the date of the letter. The plaintiff further alleges that the defendant sent letters which contained different settlement proposals and that he was confused by these proposals. As such, he alleges that the defendant again violated the FDCPA.

### B.    Settlement Agreement

The Settlement Agreement defines the settlement class[1] as "[a]ll natural persons with Pennsylvania addresses who had interest accruing on their accounts and to whom ARS sent one or more letters between December 12, 2011 to November 30, 2012." (Doc. 23, Ex. 1, Settlement Agreement, ¶8). The Amendment to the Class Action Settlement Agreement, ("Amended Agreement"), identifies that this class is approximately 9,861[2] persons. (Doc. 36, Ex. 1, p. 3).

The parties propose in the Amended Agreement that the defendant

---

[1]Pursuant to the court's orders of September 26, 2014, and January 6, 2015, the court conditionally certified the defined class.

[2]The Settlement Agreement had originally indicated that there were approximately 7,200 persons within the class.

create a class settlement fund in the amount of $30,000[3], to compensate class members. (Id.). The Settlement Agreement proposes that the costs of providing notice under the class settlement and costs of administering the class settlement are to be paid by the defendant.  (Doc. 23, Ex. 1, ¶¶ 13, 14). The Settlement Agreement further provides that the named plaintiff, Mr. Dorrance, be awarded $2,500 as statutory damages and for his service as class representative.[4] (Id., ¶9(b)). Also proposed under the Settlement Agreement is that class counsel receive $32,500 for attorney's fees and costs. (Id., ¶9(d)). Any undistributed funds are to be donated to North Penn Legal Services, Allentown, Pennsylvania, under the terms of the Settlement Agreement. (Id., ¶9(e)).

Notice under the Settlement Agreement was provided to class members by the direct mailing of a short form notice and a claim form to the last known addresses of the class members according to the defendant's records. A long form notice was also posted to a website for any class member seeking further information about the settlement. Any class member could also

---

[3]Because the original Settlement Agreement had underestimated the size of the class, it had proposed a fund of $27,500.

[4]Statutory damages under the FDCPA are capped at $1,000, 15 U.S.C. §1692k(a). The plaintiff proposes that the initial $1,000 be for statutory damages and that the remaining $1,500 be an incentive award.

request a copy of the long form notice, upon which the defendant or class administrator was to mail a copy. The Settlement Agreement provided the method for class members to exclude themselves from the settlement, as well as the process for objecting to the settlement.

At the final fairness hearing, after having discussed with counsel the concerns of the court relating to the disproportionality of attorney's fees and costs and the class representative's fees to the overall recovery of the class members, counsel for both parties agreed that a reasonable amendment to the terms of the agreement would include reducing the amount for the attorney's fees and costs to $26,000 (or 40% of the total recovery), reducing the class representative's fees to $1,750, and increasing the class members' fund to $37,250.

## C.    Notice to the Class and the Class Members' Response

Attached to the memorandum in support of final approval is the declaration of the claims administrator, which provides that notice was distributed to the class in accordance with the provisions of the Settlement Agreement and members of the class responded. As required by the Class Action Fairness Act, 28 U.S.C. §1715, et seq., notice of the settlement was provided both as originally proposed and as amended to the Attorneys

General of the United States and Pennsylvania.

Specifically, the declaration provides that a class list of 9,861 was compiled. From that, 199 duplicate records were eliminated, leaving a total of 9,662 individuals in the class who were mailed notices. A total of 902 class members did not receive notice due to a lack of correct address information and despite attempts to obtain forwarding information, leaving a total of 8,760 class members who were successfully reached by the notice. Six hundred forty-seven class members, or approximately 7.4% of the total number of notified class members made valid claims by the deadline of March 17, 2015. One additional class member made a claim by fax on March 18, 2015. Two additional class members made claims by mail that were received, respectively, on March 23 and March 30, 2015, but which did not bear a postmark. There were 19 additional claims that were tardy and one additional claim that was rejected as it was not submitted by a class member.

The claims administrator has indicated that no class member sought exclusion from this case through an opt-out request, nor has any class member objected to the proposed terms of the Settlement Agreement. The notice advised that the final fairness hearing would take place on April 14, 2015. Although the hearing was later continued, the court observed that no objectors appeared in court on that date. Further, no objectors appeared in

court on the re-scheduled dates of either April 23, 2015, or April 24, 2015.

### D.    Issues Before the Court

In considering whether to grant final approval of the class action settlement agreement, the court must decide the following issues: (1) whether the class can be certified under Fed.R.Civ.P. 23; (2) whether notice to the class regarding the settlement was adequate; (3) whether the settlement is fair, reasonable and adequate; and (4) whether class counsels' petition for attorneys' fees and costs and the class representative fees should be approved.

### 1.    Class Certification

When a court is presented with a request for approval of a class certification and settlement, it must separate its analysis of the class certification from its determination of whether the settlement is fair. See In re Insurance Brokerage Antitrust litigation, 579 F.3d 241, 257-58 (3d Cir. 2009). In order to certify a class under Fed.R.Civ.P. 23, the undersigned must find that all four requirements of Fed.R.Civ.P. 23(a) and at least one part of Fed.R.Civ.P. 23(b) are met. See Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

Here, as stated above, the settlement class includes "all natural persons with Pennsylvania addresses who had interest accruing on their accounts and to whom ARS sent one or more letters between December 12, 2011 to November 30, 2012." In its orders of September 26, 2014, and January 6, 2015, the court preliminarily certified the class. The court now considers final certification for settlement purposes.

Rule 23(a) of the Federal Rules of Civil Procedure requires that four requirements be met in order for a class to be certified: numerosity, commonality, typicality, and adequate representation. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997). The court finds that each of these requirements are met in this case. Specifically, Fed.R.Civ.P. 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Classes exceeding forty or more class members are generally held to meet the numerosity requirement. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). The instant settlement class consists of some 9,861 persons, 650 of which have submitted valid claim forms.[5] Because individual joinder of this number of individuals would be impracticable, the plaintiffs satisfy the

---

[5]This number includes the individuals who filed valid timely claims, as well as the claim of the class member which was faxed to the class administrator one day late and the two claim received by the class administrator without a postmark, which the plaintiff has requested be included in the total claims. (Doc. 41, p. 7).

numerosity requirement.

Rule 23(a)(2) requires that there are questions of law or fact common to the class. If class members share at least one question of law or fact in common, factual differences among the claims of the class members do not defeat certification. In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 310 (3d Cir. 1998). Here, the class members share a common claim of alleged violations of the FDCPA based upon the collection letters that each of them received. Thus, this prerequisite is met in this case.

Rule 23(a)(3) and (a)(4) require that the claims or defenses of the representative be typical of the claims or defenses of the class and that the representative will fairly and adequately protect the interests of the class. These two inquiries tend to merge because both evaluate the relation of the claims and the potential conflicts between the class representative and the class in general. Beck v. Maximus, Inc., 457 F3d 291, 296 (3d Cir. 2006). Typicality focuses on whether the interests of the class representative aligns with the interests of the absent class members such that the representative is working towards the benefit of the class as a whole. In re Prudential, 148 F.3d at 311. Adequacy is comprised of two inquiries. The first inquiry looks to whether any significant antagonistic interests or conflicts exist between the

class representative and absent members. The second inquiry looks to the experience and expertise of class counsel in representing the class. In this case, the plaintiff's claim is typical of those held by the class members as it is based on the same facts and the same legal theories. Moreover, the court finds that the plaintiff holds no interests that are antagonistic of the class members' interests, thus making him an adequate class representative. Moreover, the class is represented by counsel who have experience and success with such class action litigation.

With the court having found that the requirements of Fed.R.Civ.P. 23(a) are met, it must now consider whether the action is maintainable under one of the three parts of Fed.R.Civ.P. 23(b). One of those parts, Rule 23(b)(3), allows certification of a class if the questions of law or fact common to class members predominate over any questions affecting only individual members and if a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Here, the common factual and legal questions applicable to each class member predominate over any individual claims. Moreover, claims under the FDCPA based upon a common course of alleged conduct, such as the form collection letters involved in this case, are best dealt with through the class action procedure as opposed to hundreds or thousands of individual lawsuits on identical facts. Thus, the superiority

requirement of Rule 23(b)(3) is met.

Having found that the necessary requirements of Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3) are met, the court grants final certification to the class for settlement purposes.

## 2.    Notice Regarding the Settlement

Under Fed.R.Civ.P. 23(c)(2)(B), notice must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Fed.R.Civ.P. 23(b)(3). This includes individual notice to all potential class members that can be identified through reasonable effort. Notice must utilize clear, concise and plain language, and further state: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) the class member's right to enter an appearance by an attorney; (5) the class member's right to be excluded from the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of settlement on class members. See Fed.R.Civ.P. 23(c)(2)(B). The court must determine whether the notice was appropriate prior to evaluating the merits of the settlement itself. See In re Prudential, 148 F.3d at 326-27.

With respect to the instant action, the notice given to the class members

met the requirements of Fed.R.Civ.P. 23(c)(2)(B). The notices, both short and long, described the proposed settlement, its terms, and the nature of the claim filed on behalf of the class. It also described the class members' right to object or to be excluded from the settlement. The notice described the class members' right to be heard at the final fairness hearing and the binding effect which settlement would have on those class members who chose not to opt out. As indicated above, notice forms were mailed to 9,662 individuals. A total of 902 class members did not receive the notice because of a lack of correct address and despite attempts to obtain forwarding information leaving 8,760 members who received notice. Notice was also provided on a website. The court finds that the mailing of notices and the posting of the notice on a website met the requirements of Fed.R.Civ.P. 23(c)(2)(B).


### 3. Approval of the Settlement as Fair, Reasonable, and Adequate

In order to approve a class settlement, the court must find that the settlement is fair, reasonable and adequate and in the best interests of the class under Fed.R.Civ.P. 23(e). In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 785 (3d Cir. 1995). In considering a class action settlement, the court "plays the important role of

protector of the [absent class members'] interests, in a sort of fiduciary capacity." Id.

In Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975), the Third Circuit set for specific factors that the court should consider in determining whether a settlement is fair, reasonable and adequate. These factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Id. at 157. The court has reviewed these factors in relation to the instant action and is satisfied that the settlement in this case is fair, reasonable and adequate to the class members.

With respect to the first factor regarding the complexity, expense and likely duration of the litigation, the plaintiff would have the burden to establish at trial that the defendant violated the FDCPA. The ability of the plaintiff to do so is uncertain. Considering the risks inherent in all trials, the court finds the

13

immediate and guaranteed benefits of the settlement would be the better option in this case.

The second factor, reaction of the class, also weighs in favor of settlement in this case. Out of 9,662 potential class members, no members have formally objected or opted out. The fact that no member objected or opted out of the settlement tends to support a finding of acceptance of the settlement in the class.

The third factor, the stage of the proceedings and amount of discovery completed also weigh in favor of acceptance of the settlement. To this extent, the instant action has been pending since late 2012. Discovery has been conducted which would allow the parties to gain an appreciation and understanding of the relative strengths and weaknesses of the claims and defenses. Moreover, the parties reached this proposed settlement only after arms-length settlement negotiations. The court is confident that there was no collusion and therefore is deferential to the reasoned judgment of the counsel in this case.

As for the fourth and fifth factors, the risks of establishing liability and damages, in any case, the plaintiff faces the risk of establishing liability. This case is no different where the outcome is not set in concrete. The plaintiffs would be required to demonstrate that the defendant did not comply with the

14

requirements of the FDCPA in sending out the letters at issue. The defendant contests liability. The proposed settlement eliminates any risk of the uncertainty of a jury finding. Further, even if the plaintiff were to establish liability, it is uncertain the amount of damages which the plaintiff would be able to recover. There is no indication of actual damages and, therefore, the plaintiffs would be limited to statutory damages. The FDCPA limits statutory damages "to $1,000 to the named plaintiff and the lesser of 1% of the defendant's 'net worth' or $500,000 for all of the class members." 15 U.S.C. §1692k(a)(2)(B). According to documents submitted by the defendant *in camera*, the amount being offered for settlement is a vast majority of the statutory damages available even if the plaintiffs were successful at trial. These factors weigh in favor of settlement.

As for the risks of maintaining the class action through trial and the ability of the defendant to withstand greater judgment, there is always a risk of decertification in any class action and "[c]onsistent with this reality, [the court] is satisfied that the inherent difficulties of bringing a class action to trial weighs in favor of approving the settlements." In re Automotive Refining Paint Antitrust Litigation, 617 F.Supp.2d at 344. The proposed settlement affords monetary relief to 650 individuals who, without class certification, would have received nothing. Moreover, with respect to the defendant's ability to

withstand a greater judgment at trial, as discussed above, the FDCPA caps any recover at 1% of the defendant's net worth. Based upon documentation submitted *in camera* by the defendant, the settlement in this case is a vast majority of the amount which would be recoverable by the plaintiffs at trial. Thus, this factor also weighs in favor of settlement.

Finally, the eighth and ninth factors consider the reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation. As discussed above, the proposed settlement terms are as close to the best possible recovery which the plaintiffs can get. Moreover, when weighed against the risk of uncertain litigation, the court finds these factors favor settlement.

After considering all of the <u>Girsh</u> factors, the court finds the settlement in this case is fair, reasonable and adequate under <u>Fed.R.Civ.P. 23(e)</u>. Thus, the court approves the settlement.


**4.   Attorney's Fees and Costs Petition**

Prior to the final fairness hearing, counsel submitted time records to the court. (Doc. <u>25</u>, Exs. 4, 5). Counsel then submitted updated records in preparation for the final fairness hearing, (Doc. <u>41</u>, Exs. 2, 3). These records show that Edleman, Combs Latturner & Goodwin LLC billed $25,403 in

16

attorneys fees and $219.37 in costs and the Sabatini Law firm billed $14,517.50 in attorney's fees and $499.85 in costs. Counsel used the "lodestar' method at arriving at these figures.

Counsel argued that the two firms billed $40,639.72, which was more than the $32,500.00 provided in the settlement and therefore the amount provided in the settlement was proper given the favorable result for the class and the work done to achieve it. Counsel argued that additional work was done after counsel's prior showing of time and expense in briefing issues presented by the court and in the necessary amendment of the settlement and class notices to account for an increase in the size of the class.

At the final fairness hearing, the court discussed with counsel the amount of attorney's fees billed. As the court then stated, the requested counsel fees amounted to 50% of the total proposed settlement. In light of the fact that this case was not overly complex, the court expressed its concerns regarding the amount of attorney's fees requested in relation to the class recovery. Moreover, the court noted that under the lodestar method, the court would be obligated to go through counsels' billing on a line-by-line basis to assure that the billed amounts were reasonable. Upon initial review, the court noted that it was certain that counsel would not be getting all of the fees which were billed. For example, the records showed at least six different attorneys

billing approximately eight hours for what is a relatively rote complaint only ten pages in length. In another instance, three attorneys within the same firm were each charging separately for a group discussion of the case, which the court indicated it would not allow. Given items such as this, the court gave counsel an option to either (1) agree upon attorney's fees set at 40% of the class recovery, an amount accepted in even complex medical malpractice cases, which would amount to $26,000, or (2) have the court go through the billings on a line-by-line basis and omit any billings which the court deemed unreasonable or duplicative. Counsel for the parties agreed to the initial option of setting attorney's fees at $26,000. This amount includes the costs incurred by counsel.

As for the requested class representative fees, under 15 U.S.C. §1692k(a), an individual plaintiff can receive between nothing and $1,000 in statutory damages. Counsel argued that an additional award of $1,500 to Mr. Dorrance is appropriate to provide incentive to individual plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs. See Rosenau v. Unifund Corp., 646 F.Supp.2d 743, 755 (E.D.Pa. 2009). In considering the requested incentive fees, the court had also found this amount to be high, at more than 50 times the recovery of other class members. This, in addition to the fact that

Mr. Dorrance did not do much more than other class members at arriving at this settlement. In fact, Mr. Dorrance did not even appear for the final fairness hearing. While Mr. Dorrance did initiate the complaint on behalf of the class and confer with counsel in some respect to come to the settlement terms, the court is of the opinion that the requested amount for his incentive fees is excessive. Therefore, upon discussion with counsel, the parties agreed to reduce Mr. Dorrance's class representative fees to $1,750, an amount still seventeen times that being received by other class members.[6]

In light of the facts of this case, the court finds that amount of attorney's fees and costs and the class representative fees agreed to by the parties at the final fairness hearing to be reasonable. The court will therefore grant those fees as set forth above.

## III.   CONCLUSION

On the terms and for the reasons set forth above, the court will certify the class for settlement purposes. Further, the court will grant the plaintiff's motion for final approval of class settlement, as well as attorney's fees and

---

[6]With parties having agreed to reduce attorney's fees and costs to $26,000 and the class representative fees to $1,750, that leaves an additional $7,250 to be divided *pro rata* among the class members for an approximate recovery of $57.31 for each of the 650 members having filed valid claims.

class representative's fees as discussed above. An appropriate order shall

issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  May 11, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-2502-01.wpd